UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00299-RJC

| | |
|---|---|
| BRITTANY DARITY, | ) |
| Plaintiff, | ) |
| v. | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) **Order** |
| Defendant. | ) |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (Doc. Nos. 10, 13). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Brittany Darity ("Darity") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Darity filed her applications for disability insurance benefits and supplemental security income on September 17, 2018, with an alleged onset date of May 1, 2018. (Tr.[1] 30).

In denying Darity's social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 32-41). At step one, the ALJ found that Darity had not engaged in substantial gainful activity since May 1, 2018, the alleged onset date. (*Id.* at 33). At step two, the ALJ found that Darity had the following combination of severe impairments: hereditary angioedema, asthma,

---

[1] Citations to "Tr." throughout the order refer to the administrative record at Doc. No. 8.

and obesity. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 35). Before moving to step four, the ALJ found that Darity had the residual functional capacity ("RFC") as follows:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally push and/or pull with bilateral upper and lower extremities. She occasionally can climb, balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to extreme cold or heat; excessive vibration; pulmonary irritants such as fumes, odors, dust, or gases; and workplace hazards.

(*Id.* at 35-40). At step four, the ALJ found that Darity is unable to perform any past relevant work, but at step five found that she could perform jobs that existed in significant numbers in the national economy. (*Id.* at 40-41).

After exhausting her administrative remedies, Darity brought the instant action for review of Defendant's decision denying her application for disability benefits. (Doc. No. 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*,

782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Darity argues remand is warranted for two reasons: (1) the ALJ failed to adequately evaluate her hereditary angioedema at step three; and (2) the ALJ failed to evaluate Darity's Medicaid disability determination.

#### A. Step Three

At step three of the five-step sequential evaluation process, the ALJ considers whether a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). Listed impairments describe "for each of the major body systems impairments that [the Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless

of his or her age, education, or work experience." *Id.* § 404.1525(a). If the ALJ finds that a claimant's impairment "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), [the Commissioner] will find [the claimant] disabled without considering [the claimant's] age, education, and work experience." *Id.* § 404.1520(d). Some listings state a specific durational requirement, and for all others, the evidence must show the impairment "has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* § 404.1525(c)(4). If the claimant's impairment is not a listed impairment, the ALJ may determine an impairment is medically equivalent to a listed impairment by comparing the claimant's findings to that of a closely analogous listed impairment. *Id.* § 404.1526(b)(2). If the ALJ concludes the claimant's findings are "at least of equal medical significance to those of a listed impairment," then the claimant's impairment is medically equivalent to the analogous listing. *Id.* In deciding medical equivalency, the ALJ considers all evidence about the claimant's impairments including its effects on the claimant and opinions given by medical or psychological consultants. *Id.* § 404.1526(c).

"The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment." *Odoms v. Colvin*, 194 F. Supp. 3d 415, 421 (W.D.N.C. 2016). "An ALJ is not required to explicitly identify and discuss every possible listing that may apply to a particular claimant," but must provide "a coherent basis" for her step three determination. *Id.*; *Ezzell v. Berryhill*, 688 Fed. App'x 199, 200 (4th Cir. 2017) (per curiam). Indeed, "even a cursory explanation at step three may prove satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Odoms*, 194 F. Supp. 3d at 421 (quotation marks and brackets omitted). Still, "the ALJ's decision must include a sufficient discussion of the

evidence and explanation of its reasoning such that meaningful judicial review is possible." *Id.* (quotation marks omitted).

Darity argues the ALJ failed to evaluate whether her hereditary angioedema met or equaled Listing 14.07C, which is the listing under which Medicaid determined she was disabled. Listings under 14.00 cover immune system disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 14.00A. To meet the criteria of Listing 14.07C, a claimant must show an immune deficiency disorder, excluding HIV, which is "characterized by recurrent or unusual infections that respond poorly to treatment, and are often associated with complications affecting other parts of the body," and the claimant has "[r]epeated manifestations of an immune deficiency disorder with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss), and one of the following at the marked level:" (1) limitation of activities of daily living; (2) limitation in maintaining social function; or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 14.07C. Darity argues the evidence supports a finding that her hereditary angioedema equals Listing 14.07C because she has repeated manifestations of her immune deficiency disorder evidenced by swelling episodes requiring emergency treatment or hospitalization of more than fifty days over fifteen months, which is equivalent in severity to repeated manifestations of severe fatigue, fever, malaise, or involuntary weight loss, and that her swelling markedly impacts her activities of daily living.

In her step three analysis, the ALJ explained that she considered the listings under Section 14.00, and concluded:

> this listing section does not contain any corresponding impairment and the record does not reveal any related listing-level dysfunction that might medically equal a listing. Rather, although the claimant has undergone treatment and hospitalization for HAE since the alleged onset date of disability, the medical evidence of record

documents that she has been able to reduce the frequency of events with better control of triggers and taking new medication.

(Tr. 35). Later in her decision, the ALJ explained that "the medical evidence of record documents that [Darity] has been able to reduce the frequency of events with better control of triggers and taking new medication with greater consistency." (Tr. 37); *McDaniel*, 2016 WL 1271509, at *7 ("[T]he ALJ need not fully discuss her step-three determination in the section of her decision related to this analysis."). Treatment notes from January 2020 showed "overall, despite monthly attacks, the claimant was fairly happy with her overall treatment as the rate [h]as decreased significantly." (Tr. 37). The ALJ noted that a visit in May 2020 reported that Darity's symptoms "resolved rather quickly," and several providers suggested possible malingering. (*Id.*). Further, the ALJ observed that Darity "reported fewer issues when aggressively avoiding triggers such as mint, seafood, red wine, Ibuprofen, aspirin, and infection." (*Id.* at 39). The claimant testified that some of her triggers, including mint as her worst trigger, can be controlled if she prepares her own food and does not let others touch her." (*Id.*). This evidence provides a coherent basis for the ALJ's determination that Darity's condition is not medically equal to a listing in 14.00, specifically that she was able to reduce the frequency of events, and the interference with daily activities, by controlling triggers and with medication. The ALJ's decision is supported by substantial evidence. Therefore, the ALJ did not commit reversible error in finding that Plaintiff's hereditary angioedema did not meet or medically equal Listing 14.07.

### B. Medicaid Disability Decision

Darity also argues the ALJ erred by failing to evaluate her Medicaid disability determination. However, as this Court explained in *Rogers v. Commissioner*, No. 3:20-cv-206-RJC-DSC, 2022 WL 135310 (W.D.N.C. Jan. 13, 2022), for applications filed after March 27, 2017, ALJs are not required to give persuasive, specific, and valid reasons for rejecting disability

decisions from other agencies. In fact, ALJs are not required to "provide any analysis . . . about a decision made by any other governmental agency" and are only required to consider any evidence underlying the disability decision. *Id.* (citing 20 C.F.R. § 404.1504). Darity does not argue that the ALJ failed to consider evidence underlying the Medicaid opinion, but rather that the ALJ failed to evaluate the Medicaid opinion itself. Accordingly, the ALJ did not err by failing to provide an analysis about Darity's Medicaid disability determination.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: March 9, 2023

Robert J. Conrad, Jr.
United States District Judge